IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAUREN MASTRIPOLITO, Plaintiff, v. JEFFRESON HEALTH-NEW JERSEY Defendant. | : | CIVIL ACTION NO. 19-21708 |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. January 28, 2022

## I. INTRODUCTION

Plaintiff Lauren Mastripolito brings this action against Defendant Jefferson Health - New Jersey alleging that Defendant created a hostile work environment. Plaintiff alleges that she was sexually assaulted by a coworker (Anthony Hailey) at Defendant's Washington Township Dialysis Center and, after reporting the alleged assault, Defendant failed to take appropriate remedial measures in violation of Title VII of the Civil Rights Act of 1964 and New Jersey's Law Against Discrimination ("NJLAD").

Before this Court is Defendant's motion in limine to (A) exclude the testimony and report of Plaintiff's expert Michael Torchia, (B) exclude evidence of the criminal history of Anthony

Hailey, (C) exclude evidence of Anthony Hailey's discipline record, (D) exclude evidence of a prior incident report involving Anthony Hailey, and (E) exclude evidence of statements Anthony Hailey made to another coworker, Mary Pentz, over a decade prior. The Court held a hearing on these issues on January 4, 2022.

For the following reasons, Defendant's motion will be granted in part and denied in part.

## II. LEGAL STANDARD

Motions in limine "allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citing Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." Id. (citing Leonard v. Stemtech Health Sciences, Inc., 981 F. Supp. 2d 273, 276 (D. Del. 2013)). The party seeking to exclude evidence "bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground.'" Apotex, Inc. v. Cephalon, Inc., No. 2:06-CV-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) (quoting Leonard, 981 F. Supp. 2d at 276).

## III. DISCUSSION

### A. Motion to Exclude the Expert Report of Michael Torchia

Defendant moves to exclude the expert report of Michael Torchia. Michael Torchia is an employment lawyer based in Pennsylvania who has previously testified as an expert on workplace investigation in other cases. In this case, Mr. Torchia authored a report on whether Defendant properly conducted a workplace investigation relating to complaints made by Plaintiff.

Plaintiff offers Mr. Torchia's report on an issue related to vicarious liability. "[E]mployer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 104 (3d Cir. 2009). "[T]he law does not require that investigations into sexual harassment complaints be perfect. Rather, to determine whether the remedial action was adequate, we must consider whether the action was reasonably calculated to prevent further harassment." Knabe v. Bury Corp., 114 F.3d 407, 412 (3d Cir. 1997) (internal citations and quotation marks omitted). However, an "investigation might be carried out in a way that prevents the discovery of serious and significant harassment by an

employee such that the remedy chosen by the employer could not be held to be reasonably calculated to prevent the harassment." Id. at 414. The Third Circuit emphasized that "an employer can be held liable if a faulty investigation renders its subsequent remedial action inadequate, i.e., not reasonably calculated to prevent further harassment." Id. Plaintiff seeks to offer Mr. Torchia's testimony to help the trier of fact to determine whether the investigation was carried out in manner that impeded "the discovery of serious and significant harassment." Id.

Defendant does not contest Mr. Torchia's credentials. Rather, Defendant argues that Mr. Torchia's report goes to the ultimate legal issue of whether Defendant's actions were "reasonably calculated to prevent further harassment," and allowing Mr. Torchia to testify would not assist the trier of fact. Def. Mot. at 3, ECF No. 70-1 (emphasis omitted). These will be addressed in turn.

1. Whether Mr. Torchia's Report Contains Legal Conclusions

Though "[t]he District Court has discretion to determine whether expert testimony will help the trier of fact . . . the District Court must ensure that an expert does not testify as to the governing law of the case" as "an expert witness is prohibited from rendering a legal opinion." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006). "[T]he line

between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." Id. at 218.

The Third Circuit has permitted experts to "opine on established industry customs and standards, provided the testimony stops short of defining the legal duties arising from industry customs or opining on whether the defendant has complied with those duties." Jordan v. Temple Health Sys., Inc., No. 16-5561, 2018 WL 3649019, at *2 (E.D. Pa. Aug. 1, 2018) (citing Berckeley, 455 F.3d at 218). In Berckeley, a case involving whether the defendant made material misrepresentations with respect to an offshore securities purchase agreement, the Third Circuit held that an expert in offshore securities transactions could testify about the "customs and business practices in the securities industry at the time the parties entered into the Agreement" as this could "provide[] an important context which will aid the jury in determining whether [appellee] had the requisite scienter at the time to evade the registration requirements." 455 F.3d at 218. However, the expert would not be permitted to "testify as to whether [appellee] complied with legal duties that arose under federal securities laws." Id.

Similarly, in First Nat. State Bank of New Jersey v.

Reliance Elec. Co., the Third Circuit affirmed a district court's decision to permit an expert on the Uniform Commercial Code to testify as to the customs of the banking industry "to assist the trier of fact with bank and industry practices" and to "provide[] information on whether the [b]ank's conduct warranted status akin to that of a holder in due course in light of banking practices." 668 F. 2d 725, 731 (3d Cir. 1981). However, the expert was not permitted to testify about the legal duties arising from banking customs, or to make an ultimate conclusion on whether the "[b]ank lacked good faith and/or had notice of claims, thereby denying it holder-in-due-course status." Id.

Defendant argues that Mr. Torchia's report includes several pages that outline the relevant caselaw and legal standard that should be excluded. Defendant points to Jordan, where a court in the Eastern District of Pennsylvania excluded an expert report authored by Mr. Torchia that described the federal law and relevant regulations relating to the American with Disabilities ACT ("ADA") and EEOC in an ADA case. 2018 WL 3649019, at *1. In that case, the court excluded Mr. Torchia's opinion because "[t]he majority of the report consists of recitations of case law and federal regulations" and the only opinions "relate directly to the legal duties existing under the ADA, and unduly infringe on the judge's lawgiving and jury's fact-finding." Id.

at *2. Because Mr. Torchia's proffered testimony did not contain any opinions regarding industry standards, the court found that it would not "'help the trier of fact to understand the evidence' beyond what will already be provided by fact witnesses and this Court's legal instructions." Id. at *3 (citing Fed. R. Evid. 702).

Here, Mr. Torchia's report does contain several pages detailing recitation of caselaw and the relevant legal standard. This portion of Mr. Torchia's report is not admissible. However, Mr. Torchia's report also includes relevant information regarding the industry standard, the admissibility of which is discussed below.

2. Whether Mr. Torchia's Report Will Assist the Trier of Fact

Defendant argues that the remainder of Mr. Torchia's testimony regarding the relevant industry standard will not be helpful to the trier of fact. When considering whether an expert may testify the trial judge must:

> (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact.

UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832 (3d Cir. 2020) (quoting Daubert v. Merell Dow Pharm., 509 U.S. 579, 591 (1993)). Defendant argues that Mr.

Torchia is unable to satisfy the third requirement in that his testimony will not "fit" the dispute or "assist the trier of fact." Id. This condition relates "primarily to relevance," so the expert's testimony must be related to the issues at hand. Daubert, 509 U.S. at 591.

Defendant first argues that the portion of Mr. Torchia's report that discusses the industry standard is not relevant to the issues at hand. Defendant avers that because "the law does not require that investigations into sexual harassment complaints be perfect," an opinion on the adequacy of the investigation is unnecessary. Knabe, 114 F.3d at 412. As noted, "to determine whether the remedial action was adequate, we must consider whether the action was reasonably calculated to prevent further harassment." Id. (internal citations and quotation marks omitted). However, an "investigation might be carried out in a way that prevents the discovery of serious and significant harassment by an employee such that the remedy chosen by the employer could not be held to be reasonably calculated to prevent the harassment." Id. at 414. Thus, Mr. Torchia's testimony on the relevant industry standards may help the trier of fact to determine whether the investigation was carried out in manner that impeded "the discovery of serious and significant harassment." Id.

Defendant additionally relies upon several cases in which

courts excluded expert testimony on the sufficiency of an employer's investigation, finding that such testimony would not assist the trier of fact. Defendant points to Knox v. PPG Industries, Inc., a case where the Western District of Pennsylvania excluded testimony from an expert in workplace investigations, finding that the jury was capable of understanding whether the defendant conducted a flawed investigation and that the expert's testimony "would suggest a higher standard [for investigations] than what the law requires." No. 15-1434, 2018 U.S. Dist. Lexis 42508, at *3 (W.D. Pa. March 15, 2018). However, Knox is inapposite as there is no argument here that Mr. Torchia's report suggests a higher standard for investigations than what is legally required.

Defendant also relies on Crawford v. George Lynch, Inc., a case where the District of Delaware considered whether to exclude an expert report that discussed whether the defendant-employer deviated from standard employer practices. No. 10-949, 2013 WL 6504361, at *1 (D. Del. Dec. 9, 2013). Crawford specifically dealt with whether an employer exercised reasonable care to prevent and correct harassing behavior in the context of the Faragher-Ellerth affirmative defense as applied to a supervisory harassment claim. Id. The Crawford court excluded portions of the expert's report that involved industry standards because the report "generally refer[red] to 'standard practice'

or 'standards in the industry' that are 'typically put in place by organizations'" without explaining the methodology that governs the sufficiency of the industry standards. Id. at *2. Here, Crawford is also inapposite because the Defendant has not disputed Mr. Torchia's methodology.

In response, Plaintiff points to several cases where courts have found that expert testimony regarding an employer's response to complaints of harassment were admissible. See, e.g., Fantazzi v. Temple Univ. Hosp., Inc., No. 00-3175, 2003 U.S. Dist. Lexis 9731, at *5 (E.D. Pa. May 13, 2003) (allowing expert testimony "that [defendant] failed to take adequate steps to prevent retaliation against Plaintiff," but excluding the expert's "proposed legal conclusion that [defendant] retaliated against Plaintiff"); Blakely v. Continental Airlines, No. 93-2194, 1997 U.S. Dist. LEXIS 22074, *9 (D.N.J. Sept. 9, 1997) (finding the expert's testimony "will be limited to the general policies and practices a company may undertake in an effort to be effective in preventing and addressing allegations of sexual harassment").

Significantly, Plaintiff points to two recent cases where Mr. Torchia was permitted to offer his opinion on the relevant industry standards. In Vandergrift v. City of Philadelphia, the plaintiff brought a claim of hostile work environment and argued that the defendant ineffectively handled an investigation

pertaining to plaintiff's claims of sexual harassment and discrimination. 228 F. Supp. 3d 464, 488 (E.D. Pa. 2017). The defendant had argued that it exercised reasonable care to prevent and correct any harassment and discrimination. In its decision resolving summary judgment, the Eastern District of Pennsylvania allowed the plaintiff's hostile work environment claim to proceed, citing, as a reason, Mr. Torchia's expert report that outlined deficiencies in the defendant's investigation. Id. Later, the same court found that Mr. Torchia "[m]ay opine relying upon alleged deviations from cited nonlegal standards in conducting workplace investigations necessary to refute the affirmative defense of acting reasonably and promptly to correct or prevent alleged discrimination." Vandergrift v. City Of Phila., No. 16-2999, Ord. at 1, ECF No. 52. The Vandergrift court found that the proposed testimony identified deficiencies in the defendant's investigation, which are relevant to the determination of whether the defendant took adequate measures to address the plaintiff's allegations. Id. at 3-5. On the other hand, the court found that Mr. Torchia would not be permitted to testify about whether defendant's conduct violated applicable law. Id. at 7.

Similarly, in Barnes v. Shell Exploration and Prod. Co. Appalachia, the Middle District of Pennsylvania permitted Mr. Torchia to testify about the sufficiency of an investigation in

a case involving supervisory harassment, but did not permit Mr. Torchia to testify about the relevant legal standards or caselaw. No. 18-1497, Ord. at 6-7, ECF No. 117.

Under these circumstances, Mr. Torchia will be permitted to submit an updated report, consistent with this opinion, that offers an opinion on the relevant industry standards for conducting a proper and appropriate investigation. As noted, Mr. Torchia may not include opinions on the relevant caselaw and legal standard. Additionally, Mr. Torchia's report may not offer an ultimate conclusion about whether Defendant's conduct violated the relevant industry standards.

**B. Motion to Exclude Mr. Hailey's Past Criminal History**

Plaintiff does not oppose Defendant's motion to exclude evidence of Mr. Hailey's criminal history so it will be granted as unopposed.

**C. Motion to Exclude Evidence of Mr. Hailey's Past Workplace Conduct**

Defendant seeks to exclude evidence of prior written discipline that Mr. Hailey, Plaintiff's alleged assailant, had received during his employment with Defendant and Defendant's predecessor, Kennedy University Health System. Defendant argues that evidence relating to attendance issues, performance write-ups, absences, and issues related to Mr. Hailey not taking a patient's vital signs correctly are in no way relevant to the

acts Mr. Hailey is accused of committing in this case.

Defendant argues that such evidence is inadmissible pursuant to Federal Rule of Evidence 404 as it is evidence of a past act that is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). To be admissible under Rule 404(b):

> (1) The evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh the prejudicial effect under Rule 403; and (4) the [district] court must charge the jury to consider the evidence only for the limited purpose for which it was admitted.

Becker v. Arco Chem. Co., 207 F.3d 176, 189 (3d Cir. 2000) (citing J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp., 31 F.3d 1259, 1268 (3d Cir. 1994)).

With respect to the first prong, evidence must be relevant to a non-propensity purpose to be admissible. United States v. Repak, 852 F.3d 230, 243 (3d Cir. 2017). When a proponent contends that the evidence "is both relevant and admissible for a proper purpose, 'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Becker, 207 F.3d at 191 (citing United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)). Defendant argues that there is no non-propensity purpose

for which this evidence can be admitted. In response, Plaintiff argues that this evidence pertains to Mr. Hailey's overall credibility because a member of Defendant's human resources department previously testified during her deposition that Mr. Hailey would bend the rules to "would work the rules in his favor." Berwick Dep. 45:18-46:5, ECF No. 52-7. Plaintiff seeks to introduce such evidence and testimony at trial.

The Court does not find that Plaintiff has shown how this "evidence fits into a chain of logical inferences." Becker, 207 F.3d at 191. Plaintiff clearly seeks to use this evidence to show that because Mr. Hailey has allegedly broken the rules in the past, he was likely to do so with respect to Plaintiff. The Court finds that Plaintiff does not seek to offer this evidence for a proper purpose that is admissible under Rule 404(b).[1] Accordingly, Defendant's motion will be granted on this ground.

**D. Motion to Exclude Evidence of a Prior Incident Relating to Alleged Sexual Misconduct**

During the course of Defendant's investigation, a human resources representatives found a somewhat illegible handwritten incident report dated May 26, 2008 and a related corrective action notice in Mr. Hailey's department file. The incident

[1] Pursuant to Federal Rule of Evidence 404(b)(2), evidence of another wrong or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

report appears to involve a prior allegation of assault against Mr. Hailey by a patient. Defendant anticipates that Plaintiff will seek to introduce these documents as evidence of a prior incident of harassment that human resources personnel should have questioned Mr. Hailey about during the investigation. Plaintiff argues that this evidence is relevant of whether Defendant took "prompt and appropriate remedial action" when conducting its investigation. Huston, 568 F.3d at 104.

Defendant argues that admitting such evidence would violate Federal Rules of Evidence 403 as it would be more prejudicial than probative to allow such evidence to be admitted. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). Defendant argues that the jury may assume that Mr. Hailey engaged in an unwanted sexual act with a patient even though the incident report is otherwise illegible. The related corrective action notice also does not include any details other than a note that Defendant was suspended.

Because the incident report is more than a decade old, is somewhat illegible, and does not clearly describe what Mr. Hailey was accused of, the Court finds that, pursuant to Rule 403, the danger of unfair prejudice of introducing the incident report and related corrective action notice would substantially outweigh any probative value such evidence may have.

Accordingly, the Court will grant Defendant's motion on this ground.

**E. Defendant's Motion to Exclude Evidence Regarding Comments Mr. Hailey Made to Mary Pentz**

After Plaintiff reported Mr. Hailey for allegedly assaulting her, Plaintiff informed Defendant that she allegedly found a note written by Mr. Hailey in her vehicle. Defendant investigated this claim. During the course of Defendant's investigation into the origin of the note, Defendant's human resources personnel interviewed another employee, Mary Pentz. Following the interview, Lakisha Reddick, a staff member in Defendant's human resources department, sent an e-mail recapping her interview with Ms. Pentz to her supervisor, Julie Ellis. Ms. Ellis made the final determination about Plaintiff's allegations. However, Ms. Ellis never followed up with or otherwise acknowledged Ms. Reddick's e-mail. The e-mail provides:

> Mary stated that '[Mr. Hailey] was always creepy and had made a comments [sic] to her that he would 'teach her to love him they [sic] way he loved her'. Mary felt that was just bizarre since she did not know where those comments came from. According to Mary this comment was at least 15 years ago and there had been no recent incidents with Anthony. Mary stated that Anthony was always friendly.

Def. Mot. at 29, ECF No. 70-1.

Defendant argues that the contents of the e-mail are hearsay as Plaintiff would offer them for the truth of the

matter. In response, Plaintiff avers that Mr. Hailey's statements, Ms. Pentz's statements, and the e-mail itself are not being offered for the truth of the matter. Instead, Plaintiff seeks to use the e-mail to show that Ms. Reddick e-mailed the report to her supervisor, Ms. Ellis, and Ms. Ellis never followed up with or otherwise acknowledged the e-mail. Because, as noted, a central issue in this case is whether Defendant's human resources department conducted an "investigation . . . in a way that prevent[ed] the discovery of serious and significant harassment by an employee such that the remedy chosen by the employer could not be held to be reasonably calculated to prevent the harassment," Plaintiff argues that this is probative of whether Ms. Ellis conducted a proper investigation before making a decision in this case. Knabe, 114 F.3d at 414.

At the hearing, Defendant argued that allowing Plaintiff to introduce the e-mail for this limited person would increase the likelihood of confusing the relevant issues under Federal Rule of Evidence 403. The Court finds that the probative value of whether Ms. Ellis conducted a proper investigation is not substantially outweighed by the danger of confusing the issue. In any case, a limiting instruction will cure any danger of confusion.

Accordingly, Plaintiff may not offer the e-mail for the

truth of the matter, but may use this e-mail for the limited purpose of supporting the argument that Ms. Ellis failed to consider the material information provided by her staff members. If Plaintiff chooses to offer this evidence, the Court will give a limiting instruction to that effect.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion will be granted in part and denied in part. An appropriate order follows.